**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES GRINTER, ) | CASE NO. 55:12-cv-529 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, James Grinter ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a) and for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(i), 423. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On December 16, 2008, Plaintiff filed his applications for SSI, DIB and POD and

alleged a disability onset date of November 24, 2008. (Transcript ("Tr.") 11.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On December 1, 2010, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On January 21, 2011, the ALJ found Plaintiff not disabled. (Tr. 24.) On January 11, 2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On March 4, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On August 14, 2012, Plaintiff filed his Brief on the Merits. (Doc. No. 14.) On September 27, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 15.) Plaintiff did not file a Reply Brief.

Plaintiff argues that ALJ's decision is not supported by substantial evidence because the ALJ failed to: (1) fully account for Plaintiff's mental limitations in determining his Residual Functional Capacity ("RFC"); and (2) properly evaluate the materiality of Plaintiff's drug and alcohol abuse.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 45 years old on his alleged disability onset date. (Tr. 20.) He had a limited education, having completed 11th grade, and could communicate in English. (Tr. 20-21.) He had no past relevant work experience. (Tr. 20.)

### B. Medical Evidence[1]

#### 1. Treating Providers

In December 2008, Plaintiff was referred by his probation officer to Trillium Family Solutions ("Trillium"), where he reported feelings of hopelessness, anxiety, trouble concentrating, and sadness. (Tr. 194-96.) The therapist[2] noted that Plaintiff had a history of alcohol and drug abuse – specifically marijuana, cocaine and crack cocaine – as well as a criminal record that included convictions for forgery, assault, carrying a concealed weapon, receiving stolen property, and driving offenses. (Tr. 200-01, 205.) Plaintiff reported that he had used alcohol within the week prior to the examination, marijuana and cocaine within the prior two months, and crack cocaine within the prior five months. (Tr. 200.) The therapist concluded that Plaintiff had poor insight, judgment and impulse control. (Tr. 204.) The therapist diagnosed Plaintiff with dysthymic disorder, substance abuse, and adult antisocial behavior. (Tr. 206.) The therapist assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50. (*Id.*)[3]

---

1 In addition to his mental impairments, Plaintiff alleged that he was not able to work due to chronic pancreatitis. (Tr. 16.) The ALJ included physical restrictions in Plaintiff's RFC. (Tr. 15-16.) Plaintiff does not challenge the ALJ's conclusion regarding his physical non-exertional restrictions. (Plaintiff's Brief ("Pl. Br.") 10.)

2 The names and credentials of the individuals who examined Plaintiff at Trillium are not legible. (Tr. 207, 315.)

3 A GAF of 50 indicates "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shopiifting) or any serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job)." *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

In February 2009, Plaintiff attended a follow up appointment at Trillium, where the therapist noted that Plaintiff's history of substance abuse likely contributed to his chronic low grade depression.  (Tr. 314.)  The therapist noted that Plaintiff had limited insight and that his judgment needed improvement.  (*Id*.)  The therapist diagnosed Plaintiff with poly substance dependence in early remission, dysthymic disorder and anti-social personality traits, and assigned him a GAF score of 55.[4]  (*Id*.)  The therapist prescribed Lexapro to treat Plaintiff's depression.  (Tr. 315.)

On October 12, 2009, Plaintiff, who had been charged with forgery, was referred by an unspecified state court to the office of psychiatrist Barbara C. Lohn, M.D., for a mental health assessment.  (Tr. 349.)  He reported experiencing auditory hallucinations.  (Tr. 346.)[5]  The therapist assigned Plaintiff a GAF score of 58.  (Tr. 347.)  On October 29, 2009, Dr. Lohn examined Plaintiff, who complained of daily auditory and visual hallucinations.  (Tr. 341.)  He reported using crack cocaine two weeks prior to the examination.  (*Id*.)  Plaintiff was not taking his Lexapro as instructed.  (*Id*.)  Dr. Lohn diagnosed Plaintiff with schizophrenia, alcohol and cocaine dependence, and antisocial personality disorder.  (Tr. 343.)   She assigned Plaintiff a GAF score of 50, and prescribed him Haloperidol to treat his psychosis, Cogentin to prevent extrapyramidal symptoms ("EPS"), and Citalopram to treat his depression.  (Tr. 343-44.)

---

[4] A GAF of 51 to 60 indicates moderate symptoms, or moderate difficulties in social, occupational or school functioning.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

[5] The name and credentials of the individual who examined Plaintiff on October 12, 2009 are illegible, as are many of the individual's notes regarding that examination.  (Tr. 345-49.)

4

On December 9, 2009, Plaintiff reported to Dr. Lohn that he was still experiencing auditory and visual hallucinations, including seeing and hearing his deceased father and grandfather. (Tr. 339.) He reported that the Haloperidol was making him drowsy. (*Id*.) Dr. Lohn noted that Plaintiff was cooperative, alert and oriented; that his judgment was fair; and that, because he was in a community corrections center, Plaintiff was not abusing any substances. (*Id*.) She prescribed Seroquel to replace the Haloperidol. (Tr. 340.)

Plaintiff continued to treat with Dr. Lohn throughout 2010. (Tr. 329-38, 360-65, 370-75.) Dr. Lohn described Plaintiff as cooperative and alert, noting that he had either fair or adequate insight and judgment. (Tr. 331, 333, 335, 337, 360, 362, 364, 374.) Plaintiff continued to complain of auditory and visual hallucinations, generally involving deceased relatives. (*Id*.) He described the hallucinations as "manageable" or "not overly troubling," and in June 2010, reported that he was "doing very well on his medication." (Tr. 331, 333, 364.) Plaintiff denied any substance abuse during this time. (Tr. 331, 339, 337.) In October 2010, Dr. Lohn authored a note to Plaintiff explaining his diagnoses:

> Your illness is schizophrenia. This means that you sometimes see or hear things that other people do not think are real. It may also mean that sometimes your mind has trouble telling the difference between what is real and what is not real.
>
> You also have alcohol dependence and cocaine dependence. Because you have not used either alcohol or cocaine in over a year, you are in full remission. This means that you haven't had any symptoms related to substance abuse.
>
> Another diagnosis is Antisocial Personality Disorder. This means that you have had repeated legal problems. It does **not** mean that you don't like being around people.

5

(Tr. 366.) (emphasis in original)[6] In November 2010, Dr. Lohn assigned Plaintiff a GAF score of 60. (Tr. 372.)

### 2. Agency Reports and Assessments

During a March 2009 consultative exam by psychologist Michael Harvan, Ph.D., Plaintiff reported that he had not used drugs or alcohol in seven months. (Tr. 231.) Dr. Harvan noted that Plaintiff was pleasant and cooperative, with normal speech and thought, and a mildly depressed mood and affect. (Tr. 233-34.) Dr. Harvan opined that Plaintiff's immediate long-term and short term memory functioning was poor, and that he had difficulty focusing and concentrating. (Tr. 234.) Plaintiff was able to follow simple and more complex directions. (*Id.*) Dr. Harvan opined that Plaintiff's intellectual functioning was in the low average to borderline range. (*Id.*) Dr. Harvan described Plaintiff's judgment as "barely sufficient" for Plaintiff to make important decisions about his life, and noted that Plaintiff had "some cognitive deficits" but had "just recently stopped using drugs and alcohol." (Tr. 234-35.)

Dr. Harvan diagnosed Plaintiff with depressive disorder not otherwise specified, cocaine and alcohol dependence (early full remission) and antisocial personality disorder. (Tr. 238.) He assigned Plaintiff a GAF of 55, and noted a moderate limitation

---

[6] The record reflects that Dr. Lohn declined to prepare a Mental Residual Functional Capacity Form on Plaintiff's behalf because she had never seen him in a workplace setting, but, instead, provided him with the October 2010 note. (Tr. 61-62, 369.) During the hearing, the ALJ noted that she had received Dr. Lohn's records up to June 2010 and asked Plaintiff's counsel to obtain more recent treatment records. (tr. 62.) In response to Plainitiff's counsel's request that she send a narrative describing Plaintiff's condition, prognosis and GAF score, Dr. Lohn provided the records of her examinations of Plaintiff from October and November 2010, but did not provide a narrative or any other information. (Tr. 369, 370-75.)

in the area of remote long-term memory functioning and significant limitations in the areas of immediate and short-term memory functioning. (Tr. 235-36.) Dr. Harvan opined that Plaintiff's ability to understand and follow instructions was moderately impaired, that his abilities to maintain attention to perform a simple or multi-step, repetitive task and to relate to others, including fellow workers and supervisors, were moderately impaired. (Tr. 236.) Dr. Harvan concluded that Plaintiff's ability to withstand the stress and pressures associated with day-to-day work activity was "at least moderately impaired." (*Id.*)

In April 2009, state agency consultant Patricia Simmelman, Ph.D., performed a psychiatric review technique and a mental residual functional capacity assessment. (Tr. 242-55, 256-59.) She opined that Plaintiff had moderate limitations in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work settings. (Tr. 256-57.) Dr. Simmelman opined that, given other medical evidence, Plaintiff had not put forth his best effort on the objective testing performed by Dr. Harvan. (Tr. 258.) She also noted that, contrary to what Plaintiff told Dr. Harvan, he had been using alcohol as recently as December 2008. (Tr. 259.)

**C.     Hearing Testimony**

**1.     Plaintiff's Hearing Testimony**

At his December 2, 2010, administrative hearing, Plaintiff testified as follows:

He had not worked since his disability onset date of November 24, 2008. (Tr. 33.) Plaintiff was terminated from his most recent employment because he was distracted by "voices and some images from [his] dad" and he could not concentrate. (Tr. 34.) He was unable to drive due to the Seroquel, which also caused him to sleep over 12 hours each night. (Tr. 35-36, 38-39.) The Seroquel made Plaintiff feel drowsy for most of the day. (Tr. 46-47.) Plaintiff lived with his sister. (Tr. 37.) Plaintiff's three-year old son lived with Plaintiff's mother, and Plaintiff visited him about twice each week. (Tr. 37-38.) Plaintiff watched sports on television and was able to follow them "sometime[s]." (Tr. 38.)

Plaintiff last used alcohol in December 2009, and had not used any illegal drugs since November 2009. (Tr. 40-41, 45, 48.) He continued to see deceased relatives – his father, uncle and aunt – on a daily basis. (Tr. 42.) These visions occurred "[m]ostly" in the mornings "and just throughout the day." (Tr. 43.) Plaintiff believed that he was unable to work because he was not able to concentrate on what he was doing, as the voices and images of his deceased relatives were difficult to ignore. (Tr. 43-44.)

**2.     Vocational Expert's Hearing Testimony**

The ALJ gave the VE the following hypothetical:

> [A]ssume an individual of the same age, education and work experience as the claimant. This individual would be limited to performing no more than light work as defined in the regulations. And he could only occasionally climb ladders, ropes and scaffolds;

8

> climb ramps or stairs, balance, stoop, kneel, crouch and crawl. In addition, the individual is limited to performing only routine and repetitive tasks, and he can have no interaction with the public.

(Tr. 56-57.) The VE opined that the hypothetical individual could perform work as a housekeeping cleaner, garment folder or bench assembler. (Tr. 58-59.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

9

impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since November 24, 2008, the alleged onset date.

3. The claimant has the following severe impairments: depressive disorder, antisocial personality disorder, schizophrenia, a history of polysubstance abuse, and history of chronic pancreatitis with ongoing gastrointestinal complaints.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can only occasionally climb ladders, ropes, scaffolds, ramps or stairs. The claimant can only occasionally balance, stoop, kneel, crouch or crawl. He is limited to performing only routine and repetitive tasks. The claimant can have no interaction with the public.

6. The claimant has no past relevant work.

7.   The claimant was born on April 11, 1963 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.   The claimant has a limited education and is able to communicate in English.

* * *

10.  Considering the claimant's age, education, work experience and RFC, there are jobs that exist in the national economy that the claimant can perform.

11.  The claimant has not been under a disability as defined in the Act from November 24, 2008, through the date of this decison.

(Tr. 13-22.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

11

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Whether Substantial Evidence Supports The ALJ's Conclusion Regarding Plaintiff's RFC

Plaintiff argues that insufficient evidence supports the ALJ's conclusion regarding Plaintiff's RFC because: (1) the ALJ erred in assigning limited weight to the opinion of Dr. Harvan;[7] and (2) the ALJ did not adequately account for Plaintiff's difficulties in social functioning and concentration, persistence and pace. The Commissioner argues that the ALJ's decision is supported by substantial evidence in the record.

In assigning limited weight to Dr. Harvan's opinion, the ALJ noted that his opinion was "inconsistent with the balance of the record, specifically the evidence which shows that [Plaintiff's] condition has improved over time." (Tr. 19.) The ALJ pointed out that

---

[7] Plainitff also notes that, "The ALJ similarly dismissed the other consultative opinion provided by Dr. Semmelman." (Pl. Br. 12.) However, Plaintiff does not provide any argument regarding whether and why the ALJ erred in assigning significant but limited weight to Dr. Semmelman's opinion. Accordingly, he has waived any argument on this point. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

Dr. Harvan had examined Plaintiff during a time when Plaintiff was not undergoing treatment, and while Plainitff was still abusing drugs and alcohol. (*Id.*) The ALJ observed that Plaintiff's "functional capabilities ha[d] significantly improved" during the period of time after Dr. Harvan's March 2009 examination, when Plaintiff was undergoing, and was compliant with, treatment. (*Id.*) Plaintiff argues that the ALJ erred in assigning limited weight to Dr. Harvan's opinion because subsequent records show that Plaintiff was merely stable rather than improving.

As a preliminary matter, Dr. Harvan examined Plaintiff on only one occasion, and, thus, his opinion is entitled to no special deference. *See [Atterberry v. Sec'y of Health & Human Servs.](), 871 F.2d 567, 571 (6th Cir. 1989)*. Further, substantial evidence in the record supports the ALJ's explanation for assigning limited weight to Dr. Harvan's opinion. The medical evidence reflects that, during those times when Plaintiff was using alcohol and drugs and was not taking medication, his physicians assigned him GAF scores of 50, and noted that he had poor insight, judgment and impulse control. (Tr. 200-06 (December 2008, Plaintiff reporting that he was using marijuana, crack cocaine, cocaine and alcohol), 341-44 (October 2009, Plaintiff reporting that he was not compliant with his medication plan, and that he had used crack cocaine two weeks prior)). However, after October 2009 and throughout 2010, when Plaintiff was treating with Dr. Lohn, was abstaining from drugs and alcohol and was compliant with his medications, Dr. Lohn's records reflect that Plaintiff was cooperative and alert, and that he had either fair or adequate insight and judgment. (Tr. 331, 333, 335, 337, 360, 362, 364, 374.) Although Plaintiff continued to complain of auditory and visual hallucinations, he described the hallucinations as "manageable" or "not overly

troubling," and in June 2010, reported that he was "doing very well on his medication." (Tr. 331, 333, 364.)  Overall, the records reflect that Plaintiff's condition improved after Dr. Harvan's March 2009 examination, when Plaintiff was in treatment, was abstaining from drugs and alcohol, and was compliant with his medication.  Accordingly, substantial evidence supports the ALJ's decision to assign limited weight to Dr. Harvan's opinion regarding Plaintiff's limitations.

Plaintiff further argues that the ALJ erred in failing to adequately account for his psychological limitations in his RFC.  Plaintiff's argument on this point is not well taken.  As the ALJ noted in her decision (Tr. 15, 16, 17-19), the medical evidence reflected that Plaintiff experienced visual and auditory hallucinations, which affected his ability to concentrate.  In addition to the physical non-exertional limitations not challenged by Plaintiff, the ALJ included mental limitations in Plaintiff's RFC, specifically concluding that Plaintiff was limited to performing routine and repetitive tasks and having no interaction with the public.  (Tr. 15-16.)  The ALJ based Plaintiff's RFC on the entire record.  (TR. 15.)  Plaintiff points to nothing in the record – other than the opinions of the non-examining agency physicians, discussed above – suggesting that his mental limitations were greater than those assigned by the ALJ.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled], *when the claimant is proving the extent of his impairments.*") (emphasis added).  Accordingly, substantial evidence supports the ALJ's determination of Plaintiff's RFC.

14

### 2. Whether the ALJ Properly Analyzed Plaintiff's Drug and Alcohol Abuse

Plaintiff argues that the ALJ erred in failing to assess the materiality of Plaintiff's substance abuse, as required by 20 C.F.R. § 404.1535. The Commissioners argues that the ALJ was not required to undertake the analysis set forth in that section.

Plaintiff's argument is not well taken, as the materiality analysis set forth in 20 C.F.R. § 404.1535 is required only where a claimant has been determined to be disabled. *See* 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or acoholism is a contributing factor to the determination of disability.") (emphasis added). The regulation requires the Commissioner to determine whether an individual who has been found to be disabled while addicted to drugs or alcohol would still be disabled if he discontinued their use. *See, e.g.,* 20 C.F.R. § 404.1535(b)(1) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."). Here, although the ALJ noted that Plaintiff's substance abuse likely exacerbated his psychological condition – an observation made by more than one of his treating physicians – the ALJ did not conclude that Plaintiff was disabled, and, thus, was not required to engage in the materiality analysis.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

<div style="text-align: right;">s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge</div>

Date: November 2, 2012